905 F.2d 1529
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Barbara J. GOURAS (Wade), Plaintiff-Appellant,
v.
BURROUGHS WELLCOME COMPANY, Defendant-Appellee.
 No. 89-1542.
 United States Court of Appeals, Fourth Circuit.
 Submitted Jan. 18, 1990.
Decided May 7, 1990.
Rehearing and Rehearing In Banc Denied June 18, 1990.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at New Bern. Malcolm J. Howard, District Judge. (CA-88-137-4-CIV)
 Willis A. Talton, Greenville, N.C., for appellant.
 Charles R. Holton, Laura B. Luger, Moore & Van Allen, Durham, N.C., John Campion, Assistant General Counsel, Burroughs Wellcome Company, Research Triangle Park, N.C., for appellee.
 E.D.N.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, and DONALD RUSSELL and PHILLIPS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Barbara Gouras Wade appeals the district court's grant of summary judgment for Burroughs Wellcome Company in this action under the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Secs. 1001 et seq., challenging Burroughs Wellcome's discontinuation of her long-term disability benefits. The district court granted summary judgment for Burroughs Wellcome because it found the company's denial of benefits was supported by substantial evidence and thus was not arbitrary and capricious. Although the district court applied the wrong standard in reviewing the company's termination of benefits, we affirm its judgment upon our application of the correct standard to the record evidence.
 
 
 2
 * Wade worked as a Sterile Operator in Burroughs Wellcome's Greenville, North Carolina, production facility from December 1978 to May 1979, when she fell at work and injured her left arm and her back. She received benefits under Burroughs Wellcome's long-term disability (LTD) plan until 1985. In October 1985, Burroughs Wellcome terminated Wade's benefits when the company's Benefits Committee determined that she was no longer "totally disabled" under the LTD plan's definition. The plan provided that after more than a year of receiving LTD benefits a claimant had to show a "disability" within the meaning of 42 U.S.C. Sec. 423(d)(1)-(2)(A), and -(3), which defines "disability" for purposes of the Social Security Act, in order to continue to be eligible to receive benefits.[1] Under the Social Security Act definition, a claimant is not totally disabled if she can perform any substantial gainful work that exists in the national economy. Although the plan borrowed the Social Security Act's definition, it provided that
 
 
 3
 [t]he determination of whether or not a participant is totally disabled shall be made by the Committee, based upon such evidence as the Committee deems necessary or desirable. The Committee may require one or more physical examinations of the Participant by a physician selected or approved by the Committee to determine the commencement or continuation of total disability.
 
 
 4
 Joint Appendix at 42.
 
 
 5
 The Benefits Committee's decision to discontinue Wade's benefits was based on the reports of two examining physicians who concluded that she could perform sedentary work. In September 1984, orthopedic specialist Dr. Lee Whitehurst examined Wade and found that at that time she had, at most, a partial (10%) permanent disability in her left arm and that she was capable of performing sedentary work. Whitehurst examined Wade again one year later and reached the same conclusions. Acting on these reports, the Chairman of Burroughs Wellcome's Benefits Committee notified Wade in October 1985 that her LTD benefits had been terminated after reevaluation of her eligibility for them.[2] Wade exercised her right of appeal to the Benefits Committee. The Committee then sought the expert opinion of Dr. Paul Burroughs of the Raleigh, North Carolina, Bone and Joint Clinic. Dr. Burroughs' conclusions were substantially the same as those of Dr. Whitehurst--that Wade had a 10% disability in her left arm and "perhaps" a 5% to 10% disability in her back and that she should be able to do sedentary work. The Benefits Committee thus notified Wade that it had finally determined, based on Whitehurst's and Burroughs' reports--as well as Wade's failure to submit any additional evidence, that she was no longer eligible to receive LTD benefits.
 
 
 6
 Wade sued Burroughs Wellcome in Pitt County (North Carolina) Superior Court, seeking reimbursement and reinstatement of her LTD benefits. Burroughs Wellcome removed the case to federal district court and at the close of discovery moved for summary judgment. The district court granted Burroughs Wellcome's motion, reasoning that the Benefits Committee's decision was not arbitrary and capricious because it was supported by the substantial evidence of Drs. Whitehurst's and Burroughs' medical reports. Wade now appeals.
 
 II
 
 7
 Wade claims that the Committee's decision to terminate her benefits was arbitrary and capricious because it was made based solely on her medical condition, without reference to other relevant factors, and because it was made without the benefit of a vocational expert's testimony. Although we once used an arbitrary and capricious standard in reviewing denials of ERISA benefits, see Berry v. Ciba-Geigy Corp., 761 F.2d 1003 (4th Cir.1985), and LeFebre v. Westinghouse Electric Corp., 747 F.2d 197 (4th Cir.1984), the Supreme Court has now made it clear that such denials must be "reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 109 S.Ct. 948, 956 (1989). In the latter case, where the plan gives the trustee discretion to interpret its critical terms, a court should apply the deferential "abuse of discretion" standard and not disturb the trustee's interpretation if it is a reasonable one. Id. at 954.
 
 
 8
 The threshold question in this case, then, is a matter of contract interpretation: Has the plan given the Benefits Committee discretion "to determine eligibility for benefits or to construe terms of the plan?" Id. at 956. We think this plan clearly vested in the Benefits Committee the discretion to determine "total disability" and, thus, eligibility for LTD benefits. That grant of discretion is found in the provision stating that "[t]he determination of whether or not a participant is totally disabled shall be made by the Committee, based upon such evidence as the Committee deems necessary or desirable." Joint Appendix at 42.
 
 
 9
 Hence, the only remaining question is whether the Committee's determination that Wade was not "totally disabled" was reasonable.[3] We think it was. The plan's definition of total disability provided that after one year, a claimant would not be eligible for benefits if he could perform any substantial gainful work that exists in the national economy. In light of Dr. Whitehurst's two reports saying that Wade was capable of performing sedentary work, and the Committee's solicited report of Dr. Burroughs corroborating that conclusion, it was not unreasonable for the Committee to conclude that Wade was no longer "totally disabled" under the plan's definition.
 
 
 10
 Under the standard we must use, we find it unnecessary to address Wade's specific objections to the Benefits Committee's weighing of the evidence before it and its claimed failure to seek the opinion of a vocational expert or to apply decisional law under the Social Security Act. Nor need we discuss Wade's further contentions that the district court improperly considered evidence not before the Benefits Committee and that this court should apply Social Security law. Rather, we affirm the judgment of the district court on the ground that the plan gave the Benefits Committee discretion to determine total disability and the Committee did not abuse that discretion in this case. We dispense with oral argument because the facts and legal arguments are adequately presented in the materials before the court and oral argument would not significantly aid the decisional process.
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 The plan defined "Total Disability" as follows:
 A participant shall be determined by the Committee to be totally disabled if (1) the participant is unable, mentally or physically, to perform (i) the usual labor or services required of the participant as a full-time employee of the Company, and (ii) any other labor or services required of the participant by the Company taking into account the participant's education, training and experience or (2) during the continuation of such period beyond one year, the participant is under a disability as that term is defined in Section 423(d)(1)-(2)(A), and -(3) of Title 42 of the United States Code, as in effect on January 1, 1976.
 Joint Appendix at 41-42.
 
 
 [2]
 Burroughs Wellcome later terminated Wade's employment because it had no position available for a person of Wade's qualifications. That employment action is not at issue here
 
 
 [3]
 Wade has not suggested that the Benefits Committee operated under an actual or possible conflict of interest, a factor that in appropriate cases might warrant a finding of abuse of discretion. See Firestone, 109 S.Ct. at 956